**In re Omayra MARTINEZ, Debtor.**

No. 06–21403.

United States Bankruptcy Court, W.D. New York.

March 1, 2007.

---

cluding this case. *Jackson* also indicated that in the future these refinancing of negative equity cases would be addressed in connection with objections to confirmation when any response by a motor vehicle financer should

address whether it requests a hearing on negative equity or retail value.

**6.** The position and principal arguments asserted by GMAC were addressed in *Peaslee*.

John D. Wieser, Getzville, NY, for Debtor.

George M. Reiber, Rochester, NY, trustee.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On August 2, 2006, Omayra Martinez (the "Debtor") filed a petition initiating a Chapter 13 case, and George M. Reiber, Esq. (the "Trustee") was appointed as her Chapter 13 Trustee.

On September 22, 2006, the Debtor filed an amended Chapter 13 Plan (the "Amended Plan") which provided, pursuant to Section 506(a)(1),[1] that the claim of American Suzuki Financial Services Company, LLC ("American Suzuki"), secured by a 2005 Suzuki XK–7 (the "Suzuki"), was to be treated as an allowed secured claim in the amount of $19,145.00, representing what the Debtor alleged to be the retail value of the Suzuki, with the balance of the amounts due American Suzuki in connection with the Debtor's September 28, 2005 purchase of the Suzuki to be allowed as an unsecured claim.[2] The allowed secured

---

1. Section 506 provides, in part, that:
(a) (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
11 U.S.C. § 506 (2006).

2. On August 4, 2006, American Suzuki filed a secured claim (the "American Suzuki Secured Claim") in the amount of $29,298.83. This would result in a $10,153.83 unsecured claim under the Debtor's proposed Section 506(a)(1) plan treatment.

claim of $19,145.00 was to be paid with interest, in equal monthly installments through the Plan.

The Debtor's Amended Plan did not explain the reasons why it proposed a "cramdown" or "bifurcation" treatment of the American Suzuki Secured Claim, pursuant to Section 506(a)(1), rather than a treatment pursuant to that portion of Section 1325(a)(9) that has become known as the "Hanging Paragraph," since the Suzuki was purchased within 910 days of the date of the filing of the Debtor's petition.[3] The Hanging Paragraph in Section 1325(a)(9) provides that:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred with the 910–day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1– year period preceding that filing.

On October 26, 2006, American Suzuki filed an Objection to the Debtor's Amended Plan because it did not provide for the American Suzuki Secured Claim to be paid in full in accordance with the Section 1325(a)(9) Hanging Paragraph.

On October 6, 2006, the Trustee filed a Motion (the "Valuation Motion") which requested that the Court, pursuant to Section 506(a)(1), determine that American Suzuki had an allowed secured claim for the $19,145.00 retail value set forth in the Amended Plan and an unsecured claim for the balance of the American Suzuki Secured Claim. The Valuation Motion asserted that: (1) the Debtor purchased the new Suzuki on September 28, 2005 for her personal use from Irondequoit Suzuki LLC ("Irondequoit Suzuki"), which was within 910 days of the filing of her petition; (2) in connection with her purchase, the Debtor traded in a 2005 Dodge Caravan (the "Caravan"), (3) at the time she traded in the Caravan, it was subject to a lien in favor of Chrysler; (4) the Retail Installment Contract[4] entered into between the Debtor and Irondequoit Suzuki itself indicated that a negative trade-in value for the Caravan of $7,296.55 was rolled into the Contract and refinanced as part of the two separate transactions that were evidenced by the Retail Installment Contract; (5) the Retail Installment Contract indicated a total price for the new Suzuki of $31,913.00, which included $972.24 in taxes, a $2,499.00 service contract and other fees of $795.00, even though the manufacturer's suggested retail price for the new Suzuki was only $22,299.00; (6) although the Retail Installment Contract granted the holder a security interest in the Suzuki for the entire amount financed, because the American Suzuki Secured Claim included rolled-in and refinanced debt, American Suzuki did not have a purchase money security interest for that portion of the debt, and, therefore, for all of the debt included in the American Suzuki Secured Claim, as specifically required by the Section 1325(a)(9) Hanging Paragraph; and (7) because American Suzuki had a purchase money security interest for only a portion and not all of the debt included in the American Suzuki Secured Claim, the exception set forth in the Section 1325(a)(9) Hanging

---

3. The Debtor's initial plan did propose to treat the American Suzuki Secured Claim pursuant to the Section 1325(a)(9) Hanging Paragraph.

4. The Retail Installment Contract was later assigned to American Suzuki.

Paragraph did not apply, and the American Suzuki Secured Claim was subject to the cram-down and bifurcation provisions of Section 506(a)(1).[5]

On or about November 1, 2006, American Suzuki filed Opposition to the Valuation Motion.

The Trustee filed similar valuation motions in other Chapter 13 cases involving secured claims filed by a number of other motor vehicle financers (these creditors, along with American Suzuki, will be referred to collectively as the "Motor Vehicle Finance Group").[6]

The Court conducted hearings on October 18, 2006 and November 15, 2006 at which time it heard the oral arguments of the Trustee and attorneys for a number of the Motor Vehicle Finance Group, including the attorneys for American Suzuki.

On December 22, 2006, the Court issued a Decision & Order in *In re Peaslee*, 358 B.R. 545 (Bkrtcy.W.D.N.Y.2006) *("Peaslee")*. In *Peaslee*, a copy of which is attached, ▌ the Court found that Section 506(a)(1), rather than the Section 1325(a)(9) Hanging Paragraph, governs the treatment of the secured claim of a motor vehicle financer, even though the

debtor has purchased a replacement motor vehicle within 910 days of the filing of their petition for personal use, where: (1) it is shown that the secured claim includes amounts loaned to the debtor to pay off the debtor's negative equity in a trade-in vehicle, not to pay any part of the actual purchase price of the replacement vehicle, so that not all of the debt included in the secured claim is secured by a purchase money security interest; and (2) the Court, on all of the facts and circumstances presented in these refinancing of negative equity cases, in the exercise of its discretion, as specifically provided for by Section 9–103(h) of the New York Uniform Commercial Code, determined that a transformation rather than a dual status rule would be in the best interests of all of the parties and the Bankruptcy System.

On January 10, 2007, the Court issued a Decision & Order in *In re Jackson*, 358 B.R. 560 (Bkrtcy.W.D.N.Y.2007) *("Jackson")*. In *Jackson*, a copy of which is attached, ▌ the Court found that: (1) where the applicable retail installment contract did not itself indicate that negative equity had been refinanced, any interested party objecting to a motor vehicle fi-

---

**5.** Section 506 provides, in part, that:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

U.S.C. § 506 (2006).

**6.** The Trustee initially filed objections to confirmation in the cases where he believed that because of the roll-in and refinance of negative equity, the Section 1325(a)(9) Hanging Paragraph did not apply, even though the respective debtor's plan provided for treatment of the secured claim under the Section 1325(a)(9) Hanging Paragraph. It was at the Court's suggestion that the Trustee filed the valuation motions in order to insure that the respective members of the Motor Vehicle Finance Group received clear and detailed notice of the Trustee's position and so the motions could then be set down for consolidated oral arguments.

nancer's secured claim receiving treatment under that Section 1325(a)(9) Hanging Paragraph had the initial burden to demonstrate that the secured claim included debt that was not secured by a purchase money security interest; (2) the objecting party could utilize the appropriate NADA Guide value to meet their initial burden of proof as to the trade-in value of a trade-in vehicle, the retail value of a used replacement vehicle, or manufacturer's suggested retail price of a new replacement vehicle; (3) notwithstanding a determination by the Court that an interested party using NADA Guide values may have met their initial burden of proof to demonstrate the refinancing of negative equity, so that a motor vehicle financer's secured claim included debt that was not secured by a purchase money security interest, the motor vehicle financer always retained the right to demonstrate that in fact no negative equity in the trade-in vehicle was refinanced and to request a hearing for the Court to make that determination; and (4) in the event that the Court determined that the allowed secured claim of a motor vehicle financer was to be treated under Section 506(a)(1), the motor vehicle financer always retained the right to dispute any alleged retail value for the vehicle in question, and to request a hearing for the Court to determine the actual retail value.[7]

### DISCUSSION

In this case, this Court finds that the Trustee has met his initial burden of proof to demonstrate to the Court's satisfaction that the two separate financial transactions evidenced by the applicable Retail Install-

ment Contract included the separate transaction where Irondequoit Suzuki loaned the Debtor money to refinance the negative equity he had in the Caravan for the following reasons:

1. The Retail Installment Contract itself indicated that negative equity of $7,296.55 in the Caravan was refinanced; and

2. The Debtor, after adjustments for direct expenses like taxes and a service contract, paid over $28,000.00 for the Suzuki that had a manufacturer's suggested retail price of $22,299.00.

### CONCLUSION

Subject to the right of American Suzuki to request a hearing by March 12, 2007 on the issues of whether negative equity was refinanced or to determine the retail value of the Suzuki, for the reasons set forth in *Peaslee*[8] and *Jackson*, pursuant to Section 506(a)(1), American Suzuki shall have an allowed secured claim of $19,145.00, reduced by any payments received in the Martinez Case, to be paid in equal monthly payments together with the applicable *Till* rate of interest, to be set forth in the Confirmation Order presented to the Court by the Trustee, and an unsecured claim for $10,153.83.

**IT IS SO ORDERED.**

---

7. These findings, numbered (3) and (4), were primarily to address the Court's determinations in the ten other cases it had on reserve when *Peaslee* and *Jackson* were decided, including this case. *Jackson* also indicated that in the future these refinancing of negative equity cases would be addressed in connection with objections to confirmation when any

response by a motor vehicle financer should address whether it requests a hearing on negative equity or retail value.

8. The position and principal arguments asserted by American Suzuki were addressed in *Peaslee*.